MARTIN MYERS, TRUSTEE, *vs.* JOHN J. JACQUES AND OTHERS.

Money borrowed by an association for constructing a park held not to be a special fund on which the parties who had furnished labor and material for the park had a lien, although the association had no other property, and had since gone into insolvency; no such lien having been agreed upon, and the money having been used in good faith in paying the note given for the loan.

Money in the hands of a debtor is at his absolute disposal in the payment of his debts, subject only to the interposition of other creditors under the insolvent law.

And held that it did not affect the case that the president, secretary and treasurer of the association, who used the money to pay the loan, were themselves, with others, guarantors of the note given for the loan, and paid it without obtaining a vote of the association or of the executive committee directing the payment, it being found that they acted in good faith.

[Argued December 1st—decided December 29th, 1885.]

ACTION by the plaintiff as trustee in insolvency of the Farmers and Mechanics' Association to recover funds claimed to belong to the association; brought to the Superior Court, and tried to the court before *Sanford, J.* Facts found and judgment rendered for the defendants, and appeal by the plaintiff. The case is sufficiently stated in the opinion.

*G. E. Terry* and *J. O'Neill, Jr.*, for the appellant.

1. The association did not authorize these defendants, nor any other persons, to return the $3,000 which was in the treasury for the purpose of constructing a race track. The building committee reported that it had better be returned, but no vote was passed authorizing its return.

2. The $3,000 was a trust fund, raised for the special purpose of constructing a race track. It was raised in a special manner. It was not raised by an assessment on the members; nor by laying taxes; nor by a voluntary subscription from the members; but a committee was appointed to adopt some scheme to raise the money. The association had no money in the treasury. Its charter does not authorize it to lay taxes nor to assess its members. The committee appointed devised the plan of a note which the officers of the association signed in behalf of the association (though it does not appear that they were authorized to do so by the association), and then procured the signatures of some ninety different persons (one of whom at least, the defendant Jacques, was not even a member of the association) to a special guaranty. This trust fund, therefore, could not be devoted to any other purpose than that for which it was subscribed, even by the association. *Langdon* v. *Plymouth Congregational So.*, 12 Conn., 122; *Bigelow* v. *Congregational So.*, 11 Verm., 283; *S. C.*, 15 id., 370. The majority of the subscribers even could not use that fund for any other purpose than that for which it was contributed. *Abels* v. *McKeen*, 18 N. Jer. Eq., 462. In the case from 12th Conn., above cited, it was held that where a fund was raised by subscription, and was in the hands of

the defendant as trustee, the returning of this fund by him to the subscribers was a breach of duty by the trustee, and an injunction was issued restraining him. In the Vermont case cited a fund was raised to pay the minister's salary. The members of the society expended the fund in contesting his right to the salary. A court of equity compelled the individual members, who assented to this expenditure of the fund, to pay the minister's claim out of their own pockets.

3. The executive committee of the association, by its by-laws, have the management of all the affairs of the society; and not less than five members of the committee are required to constitute a quorum. Only three members of the committee were present when the return of this $3,000 was authorized, namely, the president, the treasurer, and the secretary. Jacques, the other defendant, was present and advising these officers when they concluded to return the money. He was one of the committee appointed by the association to build the track. He reported to the meeting of the association that this money ought to be returned, and he reported to the same meeting that he would have nothing further to do with the construction of the track. The order for this $3,000 was payable to him, and he was the man who took the money and handed it over to the lender. The executive committee was not formally called together for the purpose of acting on the matter, nor was a quorum of the committee ever present advising the return of the money. It does not appear from the record that any five members of the committee, either when present together as a committee, or each acting independently, consented to the return of the money. The by-laws of the association conferred on the executive committee, not on five members, the power to act. They also provide that five members shall constitute a quorum. This means, of course, that when any act is to be done, all the members of the committee shall be notified to be present, and that if five are present, these five may lawfully act. But if all the members were notified to be present, and a quorum of five

was actually present, a majority of these five could not perform a lawful act. A power conferred upon two or more individuals for private purposes must be executed by all, unless it be provided by the act conferring the power that a less number may execute it. *Patterson* v. *Leavitt*, 4 Conn., 53; *Middletown* v. *Berlin*, 18 id., 197. The rule that an authority imposed by law on three or more persons for public purposes, and especially for purposes of a judicial character, may be executed by a majority, if all have been legally notified to act, has no application to the case before us, because this authority is not imposed by law, nor for public purposes, but is conferred by a private corporation, for private purposes, on private individuals. *Patterson* v. *Leavitt*, supra; *Middletown* v. *Berlin*, supra; *Crone* v. *Daniels*, 20 Conn., 333; *Groton* v. *Hurlburt*, 22 id., 178; *Gallup* v. *Tracy*, 25 id., 17; *Hine* v. *City of New Haven*, 40 id., 478; 9 English Reps., Moak's Notes, 281. The fact that these defendants acted in good faith did not make their act legal. It was legal fraud as distinguished from actual fraud.

4. Each of these defendants guaranteed the payment of this $3,000. They were all of them pecuniarily interested in the payment of this note. These men could not, therefore, legally act in returning that money, and by so doing relieve themselves from responsibility. *Board of Supervisors* v. *Hall*, 47 Wis., 208; *Hopkins's Appeal*, 90 Penn. St., 69.

*C. M. Joslyn* and *E. F. Cole*, for the appellees.

PARDEE, J. The Farmers and Mechanics' Association of Waterbury voted to construct a park for fairs. The money for that purpose was obtained as follows:—Its president, secretary and treasurer made a note for $3,000, dated May 18th, 1880, payable to it on demand with interest semi-annually. The defendants, Jacques, Parsons and Hall, with about eighty other persons, signed the following writing upon the back of the note: "We, the undersigned,

hereby guarantee the payment of sixty dollars upon the above note until the same is paid in full." Upon this note Root, the president, borrowed $3,000 of one Dr. Shove, and placed the same in the hands of the treasurer. Subsequently a committee appointed by the association made a contract in its behalf with Thomas Martin for the construction of a trotting course, to be completed on or before August 10th, 1880, to the acceptance of the committee. Martin performed work upon his contract, but has not completed it to their acceptance. On December 7th, 1880, the committee reported to the association his non-performance of contract; also that inasmuch as the borrowed money was drawing interest, it would be best to repay it and borrow again when necessary. Neither the association nor the executive committee passed any vote upon the subject of repayment. About ten days thereafter Hall, the secretary of the association, drew an order for $3,000 upon Parsons, the treasurer, in favor of Jacques, not a member of the association, but of the committee appointed to procure the construction of the track. These persons are made defendants. The treasurer paid the money to Jacques, and he caused it to be returned to the lender.

In April, 1881, the association became indebted to A. L. Peck in the sum of about $800 for lumber for a fence, and to G. Tracy in the sum of about $400 for labor in erecting it.

Since September, 1881, the association has been in insolvency, and the plaintiff is its trustee. He complains substantially as follows: " The plaintiff says that he needs said fund so raised as aforesaid, together with the other moneys of the said association, for the purpose of paying said Martin, Peck and Tracy. That on or about the 18th day of December, 1880, the defendants fraudulently and wrongfully combined, conspired and agreed together to convey away the above mentioned funds so raised as aforesaid for the purpose of paying for said track and fence, together with the other money in said association's treasury; and for the purpose aforesaid fraudulently and wrongfully,

and without any authority of said association, or from its proper committee or officers, drew a certain order on the said association's treasurer, pretending and purporting to be the order of the said association for the sum of $3,000; and then and there, on or about said 18th day of December, 1880, with the said order so fraudulently drawn and issued as aforesaid, procured from said treasurer said above mentioned money, and then and there converted and disposed of the same to their own use."

The defendants had judgment. The plaintiff appeals for reasons substantially as follows:—" That the court erred in deciding that said $3,000 borrowed was not a special fund raised for the construction of said park; and in further deciding that the said fund could be taken and used for the purpose of paying other debts of said association than those contracted for the construction of said park, at least until after said park expenses were first paid. Also in deciding that three members of the executive committee of said association could appropriate said $3,000 to the payment of said claims to Dr. Shove, provided they acted in good faith in so doing. Also in deciding that three members of the executive committee, each one of whom was personally and individually liable as guarantor on said $3,000 note, had the power to appropriate the said $3,000 so in the treasury to the payment of said note on which they were guarantors, and that where they had a personal interest they were qualified to act."

If we should concede that when the treasurer of the association paid its debt for borrowed money it also was indebted to Martin, the plaintiff would remain without cause of action. Although the payment of the debt due from the association was made by the custodian of its money without any special direction from it, yet the act gave neither to it, nor to its trustee in insolvency as the agent of its creditors, any right of action against him. For it is the legal duty of a debtor to pay matured obligations, and his right to pay such as have not matured with the creditor's assent; the investment is absolutely safe; pre-

sumptively it is to the advantage of a debtor to free him-
self from debt; presumptively the agent who applies his
principal's money upon the principal's debt benefits him;
and there is no finding that the payment injured this asso-
ciation. The fact that the treasurer and his co-defendants
were guarantors of the debt discharged does not vary the
case; the legal significance of that fact, if it has any, is
exhausted upon the question of good faith; and the finding
is that the payment was made in good faith, upon the belief
that it would be for the benefit of the association. Upon the
facts the money of the association in the hands of its treas-
urer was at its absolute disposal, subject only to the inter-
position of creditors under the insolvent law within sixty
days after a payment to a preferred creditor; and it was none
the less so that its debts equalled its assets. No matter
how confidently a creditor may rely upon the fact that his
debtor has money sufficient to pay him; no matter, indeed,
what promises the debtor may make as to payment; he
thereby obtains no lien upon the money; no trust to the
exclusion of other creditors is stamped upon it in his favor,
of which either law or equity will take cognizance. As a
matter of law it is exposed to seizure by another creditor
more vigilant, or reception by one more favored. The law
does not lift any creditor to a place of preference who
simply trusts his debtor.

There is no error in the judgment complained of.

In this opinion the other judges concurred.